Jud G. ALEXANDER, d/b/a Alexander Oil Company, Appellant,

v.

Cleo and Norma Kay COOPER, Appellees.

No. 13–91–529–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 6, 1992.

Opinion on Motion for Rehearing Dec. 17, 1992.

W.C. Kirkendall, Saegert, Kirkendall, Frost and Raetzsch, Seguin, for appellant.

Errol John Dietze, Raymond H. Reese, Dietze & Reese, Cuero, for appellees.

Before NYE, C.J., and DORSEY and GILBERTO HINOJOSA, JJ.

## OPINION

NYE, Chief Justice.

Cleo and Norma Kay Cooper (lessors) sued Jud G. Alexander, d/b/a Alexander Oil Company (Alexander) (lessee), for breach of a lease agreement. The Coopers asserted that during the term of the lease, Alexander placed automatic car-wash equipment on the leased premises and that he breached the lease by removing the car-wash equipment before expiration of the lease term. After a bench trial, the trial court concluded that under the terms of the lease agreement, the car-wash equipment was an improvement and that it should have been surrendered to the Coopers at the end of the lease. The trial court awarded the Coopers $7,750 as damages for the wrongful removal of the car-wash equipment and $4,213 in attorneys fees. Alexander attacks the trial court's judgment in four points of error. We affirm.

The Coopers, as lessors, and Jud Alexander, as lessee, entered into a lease agreement dated May 16, 1984, which covered property located on the corner of Broadway and Esplanade in Cuero, Texas (Cuero Property). A convenience store was on this property. The lease provided for a three-year term which expired on March 31, 1987. After the effective date of the lease, Cleo Cooper agreed to let Alexander put a car wash on the Cuero Property. To accomplish this task, Alexander built a brick building and bolted a car-wash machine to the foundation and walls of the structure. On March 20, 1987, about eleven days before the lease ended, Alexander removed the car-wash machine, the subject of this suit, from the building. The building remained on the Cuero Property after the lease ended.

Cleo Cooper testified that Alexander removed everything from the car-wash build-

ing that was bolted and tied down, including the electrical work and the light fixtures. Cooper also testified that the lease agreement allowed Alexander to make certain improvements and additions to the Cuero Property which would be left there upon termination of the contract. Cooper's testimony was that the inner workings of the car wash belonged to him under the terms of the lease agreement. He stated that he and Alexander did not discuss whether the car wash would remain on the Cuero Property upon termination of the lease. Shortly after the lease ended, Cooper paid roughly $15,000 for a used car-wash machine to replace the one which Alexander removed.

Alexander testified that before the lease ended, he removed the car-wash machine and all equipment belonging to Alexander Oil Company which was on the Cuero Property. He also testified that he and Cooper did not discuss whether the car-wash machine would remain on the Cuero Property upon termination of the lease.

Wayne Wolf testified that he worked for the company which sold the car wash to Alexander and installed it on the Cuero Property. He considered the inner workings of the car wash, which Alexander removed, to be a piece of equipment.

■ By points one and two, Alexander complains that the trial court erred in entering judgment for the Coopers because there was no evidence or insufficient evidence to support the conclusion that the automatic car-wash equipment was an "Improvement" as defined under art. 18 of the lease agreement. By point three, he argues that the trial court erred in entering judgment for the Coopers because the car-wash equipment was a trade fixture, which was not covered by the terms of the lease, and was therefore properly removed when the lease ended.

■ A written lease agreement governs the intention of the landlord and tenant with respect to their property rights in fixtures. *Fenlon v. Jaffee*, 553 S.W.2d 422, 429 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Haverfield Co. v. Siegel*, 366 S.W.2d 790, 791 (Tex.Civ.App.—San Anto-

nio 1963, writ ref'd). The general rule that a tenant may remove and take away trade fixtures at the end of the lease is subject to contracts to the contrary. *Neely v. Jacobs*, 673 S.W.2d 705, 707–08 (Tex.App.—Fort Worth 1984, no writ); *Eckstine v. Webb Walker Jewelry Co.*, 178 S.W.2d 532, 535 (Tex.Civ.App.—Fort Worth 1944, writ ref'd w.o.m.). *See Reader v. Christian*, 234 S.W. 155, 157 (Tex.Civ.App.—Beaumont 1921, writ ref'd) (general rules of law pertaining to fixtures must yield to provisions of contract made by parties). The question of intention as well as the question whether the property has the status of a fixture is a question of fact to be determined by the trier of fact. *Fenlon*, 553 S.W.2d at 429; *Goodyear Service Stores v. Clegg*, 361 S.W.2d 445, 446 (Tex.Civ.App.—San Antonio 1962, no writ).

In the present case, at least three articles of the lease agreement are important to the disposition of this lawsuit. Article 10.2 provided, in pertinent part, that "all alterations and additions, upon termination or expiration of this lease, shall become the property of Lessor." Article 18 provided, in pertinent part (emphasis ours):

Lessee shall, on expiration or termination of the term or any extension thereof, surrender the Premises to Lessor, including all *Improvements* constructed or placed by Lessor or Lessee thereon, in good condition and repair, reasonable wear and tear excepted. All such *Improvements* placed thereon by Lessee shall thereupon become the property of Lessor.

Article 1.1 provided, in pertinent part (emphasis ours):

"Improvements" shall mean *all* buildings, structures, *equipment, fixtures*, landscaping, utility lines, roads, driveways, fences, parking areas, contiguous and adjacent easements and entry rights on the Premises and all other improvements to the Premises, whether or not owned or leased by Lessor, located in or upon the Premises.

■ When contracting parties set forth their own definitions of the terms they

employ, the courts are not at liberty to disregard these definitions and substitute other meanings. *Fulton v. Texas Farm Bureau Ins. Co.,* 773 S.W.2d 391, 392 (Tex. App.—Dallas 1989, writ denied); *Hart v. Traders & Gen. Ins. Co.,* 487 S.W.2d 415, 417–18 (Tex.Civ.App.—Fort Worth 1972, ref'd n.r.e.). Therefore, the definition of "Improvement" as used in article 1.1 will control the provision in article 18 which provides that "[a]ll such improvements placed thereon by Lessee shall thereupon become the property of Lessor." (Article 1.1 defined "Improvement" to include both "equipment" and "fixtures.")

Wayne Wolf's testimony established that the inner workings of the car wash were a piece of equipment. Cleo Cooper's testimony showed that Alexander removed everything from the car-wash building that was bolted and tied down, including the electrical work and the light fixtures. Therefore, according to articles 18 and 10.2, Alexander should have surrendered the car-wash equipment to the Coopers at the end of the lease. The lease agreement was evidence of the parties' intention and showed by the definition of "Improvements" that fixtures *and* equipment placed on the premises remained the property of the lessor. *See Fenlon,* 553 S.W.2d at 429; *Siegel,* 366 S.W.2d at 791. We conclude that there was sufficient evidence to support the trial court's conclusion that the car-wash equipment was an improvement and that it should have been surrendered to the Coopers at the end of the lease. We therefore hold that the trial court did not err in entering judgment for the Coopers. Points one, two, and three are overruled.

■ By point four, Alexander complains that the trial court erred in entering judgment in the Coopers' favor for costs and attorneys fees because a party is only entitled to them in the event it prevails. Rule 131 of the Texas Rules of Civil Procedure provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." In the present case, the trial court ordered that all of the court costs expended or incurred in this cause be ad-judged against Alexander. Since the Coopers were the successful parties to this lawsuit, we hold that the trial court did not err by ordering Alexander to pay the court costs. *See* Tex.R.Civ.P. 131.

■ Concerning attorneys fees, § 38.-001(8) of the Civil Practice & Remedies Code provides that a person may recover reasonable attorneys fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is based on a breach of written contract. Factors to be considered in determining the reasonableness of attorneys fees include the time and labor involved, the nature and complexities of the case, the value of the interest involved, the extent of the responsibilities assumed by the attorney, and the benefits resulting to the client from the attorney's services. *Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.,* 794 S.W.2d 442, 449 (Tex.App.—Corpus Christi 1990, writ denied); *A.H. Belo Corp. v. Southern Methodist Univ.,* 734 S.W.2d 720, 724 (Tex.App.—Dallas 1987, writ denied).

In the present case, Errol John Dietze, the Coopers' attorney, and W.C. Kirkendall, Alexander's attorney, stipulated that attorney Dietze's hourly charge was $125 per hour and that this was a fair and reasonable rate. They also stipulated to attorney Dietze's expenses. Attorney Dietze informed the trial court that his fees and expenses totaled $4,219, plus his fee for the rest of the day.

We conclude that the stipulation, along with the nature of this case and the favorable verdict, entitled the Coopers to recover their attorneys fees. *See Jones Oil,* 794 S.W.2d at 449; *A.H. Belo,* 734 S.W.2d at 724.

The trial court's judgment is AFFIRMED.

### OPINION ON MOTION
### FOR REHEARING

On rehearing, Alexander, the appellant in this case, contends that we erred in affirming the trial court's judgment because the property in question, *i.e.,* the car-wash

equipment, did not constitute "improvements" on the premises under the lease agreement. Appellant also contends that the car-wash equipment was not in any sense attached to the realty, to the foundation, or to the walls of the structure which housed the car wash.

On direct-examination, Cleo Cooper (lessor) was asked what type of improvements Alexander (lessee) placed on the leased premises. He responded, in relevant part, that "[t]here was a carwash that was put in right here, a brick building was erected there and a carwash was bolted to the foundation and to the walls of the structure." He also testified that Alexander cut the bolts in order to remove the car wash.

Wayne Wolf, the person who worked for the company which sold the car wash to Alexander and installed it on the premises, explained that his company installed a car wash by bolting a boom mount to the wall. Next, the track and the guide rails were bolted to the concrete floor, and the car-wash equipment was rolled onto the track. He also testified that the car wash was attached to the building by the boom and hoses. He stated that a car wash was removed by unbolting it from the floor. He considered the inner workings of the car wash, which Alexander removed, to be a piece of equipment.

Article 18 of the lease agreement provided, in pertinent part, that "[l]essee shall, on expiration or termination of the term or any extension thereof, surrender the Premises to Lessor, including all *Improvements* constructed *or placed* by Lessor or Lessee thereon. ... All such *Improvements* placed thereon by Lessee shall thereupon become the property of Lessor." Article 1.1 provided, in pertinent part, that " '[i]mprovements' shall mean all ... *equipment* ... on the Premises." (emphasis ours).

As we stated in our main opinion, when contracting parties set forth their own definitions of the terms they employ, the courts are not at liberty to disregard these definitions and substitute other meanings. *Fulton*, 773 S.W.2d at 392; *Hart*, 487 S.W.2d at 417. Therefore, the definition of "Improvements" as used in article 1.1 will

control the provision in article 18, which provided that "[a]ll such improvements placed thereon by Lessee shall thereupon become the property of Lessor."

The evidence showed that Alexander installed the car-wash equipment on the premises during the lease term. According to article 18, the car-wash equipment became the Coopers' property. The Motion for Rehearing is overruled.