NO. 07-01-0240-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 14, 2002

______________________________

ANDRE DUPREE RACHEL,

Appellant

v.

THE STATE OF TEXAS, 

Appellee

_________________________________

FROM THE 46
TH
 DISTRICT COURT OF WILBARGER COUNTY;

NO. 9956; HON. TOM NEELY, PRESIDING

_______________________________

Before BOYD, C.J., QUINN and REAVIS, JJ.

Andre Dupree Rachel (appellant) pled guilty to sexual assault and was sentenced to three years imprisonment.  Via two issues, he complains that error occurred during punishment because 1) the trial court failed to give his requested instruction to the jury regarding probation and 2) the State improperly presented evidence regarding the victim’s character during its case-in-chief.  We affirm.

Issue 1: Denial of Requested Jury Instruction

Appellant argues that the trial court committed reversible error in refusing his requested instruction.  He had requested the court to instruct the jury that 

If the punishment assessed by you is not more than ten years confinement 
and since the Defendant has not ever been convicted of a felony in this or any other state
, you may recommend the sentence be suspended and the Defendant placed on community supervision.

(Emphasis added).  The court refused and instead instructed the jury that

If the punishment assessed by you is not more than ten years confinement and 
you further find that he has not ever been convicted of a felony in this or any other state
, you may recommend the sentence be suspended and the defendant placed on community supervision.

(Emphasis added).  We overrule the issue.

As can be seen by comparison of the italicized portions of the two instructions, appellant sought to have the trial court find that he previously had not been convicted of a felony and so instruct the jury.  However, statute requires the jury to make that finding
.  
Tex. Code Crim. Proc. 
art. 42.12, §4(e) (Vernon 2002) (stating that probation may be granted if the defendant files a written sworn motion with the judge wherein he alleges that he has not previously been convicted of a felony in this or any other state, and “the jury enters in the verdict a finding that the information in the defendant’s motion is true”).  Thus, the trial court did not err in refusing to deny the jury the opportunity to grant probation by itself making the requisite finding about appellant’s prior felony convictions. 

Issue Two: Admission of Victim Character Evidence

Appellant next contends that the trial court committed reversible error in admitting evidence of the victim’s character and maturity when he had not put the victim’s character or maturity in issue.  We overrule the point for the following reason.

First, appellant objected to the admission of the evidence by contending that it was not relevant.  Nothing was said by appellant about the State being prohibited from offering evidence of the victim’s character and maturity when same has not been placed in issue.  Nor can we say from the context of the exchange between appellant and the trial court that the latter understood that appellant questioned the admission of the evidence because it purportedly tended to evince the victim’s character and maturity.  Consequently, the general allusion to “relevance” was not enough to preserve complaint founded upon the specific grounds now being urged.  
Tex. R. App. P.
33.1(a)(1)(A); 
Aguilar v. State
, 26 S.W.3d 901, 905-06 (Tex. Crim. App. 2000).  

Furthermore, while appellant did object to some of the evidence purportedly illustrating the victim’s character and maturity, he did not object to all of it.  Nor did he request a running objection.  So, since some evidence of the ilk about which appellant now complains was admitted without objection, appellant again waived his complaint.  
Ethington v. State
, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991) (stating that a defendant must object each time evidence on a particular subject matter is offered unless he makes a running or continuing objection or moves the court outside the presence of the jury to consider the admissibility of 
all
 evidence on a particular subject matter);
 Russell v. State
, 904 S.W.2d 191, 196-97 (Tex. App.–Amarillo 1995, pet. ref’d) (stating that a party must continue to object each time the purportedly inadmissible evidence is offered to preserve error).

Accordingly, we affirm the judgment of the trial court.

Per Curiam

Do not publish.ording to the insurance policy in question, an insured was defined in three ways.  That pertinent here concerned a person “occupying a covered auto.”  That is, “any person occupying a covered auto” was deemed an insured.  Furthermore, the word “occupying” was defined in the policy as meaning “in, upon, getting in, on, out or off.”  So, because William allegedly was not “in, upon, getting in, on, out or off” of a covered vehicle when hit by the cab, he was not an insured.  We agree.

It is beyond dispute that general rules of contract interpretation apply to the interpretation of insurance contracts.  
Progressive County Mut. Ins. Co. v. Sink
, 107 S.W.3d 547, 551 (Tex. 2003).  Similarly unquestionable is the rule holding that when terms are defined in an insurance policy, that definition controls their interpretation.  
Trinity Universal Ins. Co. v. Cowan, 
945 S.W.2d 819, 823 (Tex. 1997).  

Next, we have found three opinions in which courts of this state were asked to determine whether an individual was an insured due to his “occupying” a vehicle and the term “occupying” was defined (in the policy) the same way it was here.  
See e.g.
, 
McKiddy v. Trinity Lloyd’s Ins. Co.
, No. 05-03-0908-CV, 2004 Tex. App. LEXIS 2919 (Tex. App.–Dallas April 1, 2004, pet. filed); 
Schulz v. State Farm Mut. Auto Ins. Co.
, 930 S.W.2d 872 (Tex. App.–Houston [1
st
 Dist.] 1996, no writ); 
Fulton v. Texas Farm Bureau Ins. Co.
, 773 S.W.2d 391 (Tex. App.–Dallas 1989, writ denied).  In each, the injury occurred while the complainant or decedent was outside the vehicle.  Yet, that the injury so occurred did not alone determine whether he was in, upon, or getting in, on, out or off of the conveyance, according to the courts.  Instead, each either implicitly or explicitly focused upon the existence, if any, of a causal nexus between the covered vehicle and the injuries suffered.  
McKiddy v. Trinity Lloyd’s Ins. Co.
, No. 05-03-0908-CV, 2004 Tex. App. LEXIS 2919 at 6-8; 
Schulz v. State Farm Mut. Auto Ins. Co.
, 930 S.W.2d at 876
; 
Fulton v. Texas Farm Bureau Ins. Co.
, 773 S.W.2d at 392-93.  In other words, the respective courts read the phrase “in, upon, getting in, on, out or off” as requiring not necessarily some physical contact with the vehicle but rather a causal relationship between the vehicle and the injuries.  
Id.
  And, in assessing the existence of this relationship, the courts considered such indicia as the physical proximity between the injured person and the vehicle, 
McKiddy v. Trinity Lloyd’s Ins. Co.
,
 supra
, the amount of time during which the injured person was outside the vehicle, 
id.
, the purpose for being and his actions while outside the vehicle, 
id.
, 
Fulton v. Texas Farm Bureau Ins. Co.
, 
supra
, and whether an impact with the covered vehicle caused the injuries.  
McKiddy v. Trinity Lloyd’s Ins. Co
., 
supra
.  

While one could question whether physical contact with the covered vehicle is actually necessary when the potential insured suffers injury at the hands of the uninsured or underinsured driver, the indicia cited in 
McKiddy
 and the others compel that more is needed than the mere presence of a covered vehicle.  In essence, getting in, getting on, getting off and getting out connote not only action 
immediately
 directed towards entering or exiting the auto but also an ongoing yet incomplete process.  For instance, there is a difference between getting out of a car (a process that has begun but has yet to be completed) and being out of a car (a completed process).  According to the policy the former is covered under the definition of “occupying,” but the latter is not. 

 Next, where one lies in the continuum of an ongoing process versus a completed act depends on the interaction of such factors as those addressed in 
McKiddy
, 
Schulz
, and 
Fulton
.  Taken together, those opinions direct us to focus upon whether there was a conjunction between 
time, place, act, and purpose.  As illustrated in 
Fulton
, merely walking in a parking lot after exiting from a car to search for witnesses to an auto accident failed to evince the requisite conjunction.  Simply put, the circumstances showed a completed process.  That is, Fulton was no longer “getting” out or off of the vehicle when hit for 1) some time had passed (though it may have been brief) from the moment he relinquished contact with the car, 2) he was some distance from the car (though he and the car may have been in general proximity to each other), 3) he was walking across the parking lot, and 4) his purpose was not directed towards getting in or out of the car.  Thus, there was no conjunction between time, place, act and purpose immediately directed towards entering or leaving the insured vehicle.  The process implicit in the definition of “occupying” had been completed by Fulton, and the immediate interplay between the indicia alluded to in 
McKiddy
, 
Schulz
, and 
Fulton
 was non-existent.                

Here, the evidence of record simply indicates that William was outside the parked truck performing his employment duties in the emergency lane of Interstate 75 when he was struck from behind by the cab.  There is no evidence suggesting that he just left the confines of the vehicle or that he was outside it for
 only a very brief period when the incident occurred, that he was returning to the vehicle at the time, that his purpose for  the vehicle was anything other than having it as a potential means of conveyance if and when he chose to depart, that the vehicle was being used in any way incremental to the particular duties being performed (as opposed to it simply being parked on the interstate), or that he was touching or attempting to touch or
 otherwise immediately adjacent to it at the time.  Again, the record merely discloses that the truck was simply present as William and his co-worker, who were standing on the tarmac performing their jobs, were hit.  Given this, we conclude that there is no evidence of a nexus (or conjunction of time, place, purpose, and act) between the truck and William’s injuries to satisfy relationship contemplated in 
McKiddy
, 
Fulton
, and 
Schulz
.  Thus, and as a matter of law, he was neither “occupying” the truck nor an insured under the policy 
when the cab hit him.

Our disposition of the third issue relieves us from having to address the others asserted by the Company.  Accordingly, we reverse the judgment of the trial court and render judgment decreeing that Pearson take nothing from the Company.

Brian Quinn

   Justice